# Supreme Court of Florida

———————

No. SC2023-1091

———————

**JOHN F. MOSLEY,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

November 21, 2024

PER CURIAM.

We have twice vacated the death sentence imposed on John F. Mosley for the first-degree murder of his infant son. Most recently, in 2022, we vacated the death sentence imposed after Mosley's second penalty phase trial. *Mosley v. State*, 349 So. 3d 861, 863 (Fla. 2022). But we concluded that Mosley was not "entitled to a third penalty phase trial." *Id.* We "remand[ed] solely for a new hearing pursuant to *Spencer v. State*, 615 So. 2d 688 (Fla. 1993), and a new sentencing hearing." *Mosley*, 349 So. 3d at 870. We did so because we agreed with Mosley that "the trial court failed to

address Mosley's unequivocal motion to represent himself at his *Spencer* hearing." *Id.* at 863 (footnote omitted).

Upon remand, Mosley ironically wasted little time in seeking to have counsel appointed, including for the new *Spencer* hearing. In any event, the trial court again imposed a death sentence, which Mosley now appeals. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. We affirm. The two issues raised by Mosley are not properly before this Court.

## I. BACKGROUND

A jury convicted Mosley of the first-degree murders of his ten-month-old son, Jay-Quan, and the boy's mother, Lynda Wilkes.[1] The murders took place on April 22, 2004. The facts surrounding the murders are set forth in prior opinions. *See Mosley v. State*, 209 So. 3d 1248, 1254-55 (Fla. 2016); *Mosley v. State*, 46 So. 3d 510, 514-15 (Fla. 2009). In short, evidence—including eyewitness testimony—presented at Mosley's trial in 2005 established that "he strangled . . . Wilkes; asphyxiated . . . Jay-Quan, in a garbage bag; and disposed of both their bodies, hers by immolation, his in a

---

1. Mosley received a life sentence for the Wilkes murder.

dumpster." *Mosley*, 349 So. 3d at 863. "[T]he police were able to recover Wilkes's remains, which were badly burned," but "the baby's body was never recovered." *Mosley*, 46 So. 3d at 516. Wilkes's remains were so badly skeletonized that the Chief Medical Examiner, Dr. Margarita Arruza, who conducted the autopsy, testified that she could not pinpoint a cause of death beyond just "call[ing] it a homicidal violence of unspecified means." And because the baby's body was never recovered, Dr. Arruza unremarkably testified that a healthy ten-month-old baby would not live long if placed into a trash bag that is then tied shut.

In our most recent opinion, we laid out the procedural history leading up to and including Mosley's second penalty phase. *See Mosley*, 349 So. 3d at 863-66. As noted above, although we vacated Mosley's death sentence, we rejected his "allegations of error at his [second] penalty phase." *Id.* at 869. One allegation of error was Mosley's claim "that the trial court erred in refusing to consider his motion for an evidentiary hearing based on newly discovered evidence." *Id.* at 870. We concluded that "the trial court correctly denied the motion because Mosley was not authorized to file it himself while represented by counsel." *Id.*

After we upheld Mosley's second penalty phase and ordered the limited remand, Mosley's appointed counsel filed a document in the circuit court on January 2, 2023, seeking to "explicit[ly] . . . adopt[]" Mosley's previously filed (and unauthorized) claim of newly discovered evidence. Specifically, counsel sought to adopt Mosley's claim that Dr. Arruza, who apparently retired in 2011 due to dementia, was likely impaired when conducting the autopsy of Wilkes's body and when testifying at Mosley's original trial in 2005. Counsel noted that this Court had rejected this claim but not on its merits. And counsel requested an evidentiary hearing, relying on this Court's decision in *Farina v. State*, 191 So. 3d 454 (Fla. 2016), for the proposition that claims of newly discovered evidence should be brought as soon as possible and not postponed until after resentencing.

On February 3, 2023, the trial court entered a written order summarily denying the "adopted" motion, concluding that "the contents of [the] motion were neither newly discovered nor likely to produce an acquittal or lesser sentence on retrial." Among other things, the court reasoned that the allegations did not discredit Dr. Arruza's testimony and that even if they did, the testimony "was of

- 4 -

little evidentiary value." The court explained that because of the condition of "Wilkes's burnt, skeletal remains," Dr. Arruza "could not determine the manner of death beyond homicide," and that "[b]ecause Jay-Quan's body was never found," Dr. Arruza "testified that a ten-month[-old] baby would suffocate to death if wrapped in a trash bag."

On May 31, 2023, the trial court held the new *Spencer* hearing, at which the defense presented the testimony of Mosley's mother, wife, and daughters. On July 7, 2023, the trial court held the sentencing hearing and filed the sentencing order, in which the court imposed a sentence of death. The sentencing order largely tracks the previous sentencing order, with some modifications to reflect the new *Spencer* hearing.

This appeal followed.

## II. ANALYSIS

Mosley raises two issues in this appeal. Neither issue is properly before this Court. Accordingly, we affirm.

### "Reverse" Jury Nullification

Mosley's first claim seeks "a new penalty phase" on the ground that the jury in the second penalty phase purportedly ignored the

judge's instructions regarding mitigation. Mosley interprets the completed verdict form to mean that "the jury found that [he] did not prove any valid mitigating evidence." And he contrasts the verdict form with the sentencing order, in which the trial judge found and weighed twenty-eight mitigating circumstances (assigning "slight," "minimal," or "no" weight to twenty-five of them, and "moderate weight" to the remaining three). This supposed dichotomy, according to Mosley, amounts to something Mosley refers to as "reverse" jury nullification.

Mosley presented a version of this claim to the trial court after the jury returned its verdict, and the issue was argued at a hearing. But Mosley did not raise the issue on appeal of the second penalty phase. In other words, he abandoned the issue on appeal. *Cf. Valentine v. State*, 339 So. 3d 311, 314 n.5 (Fla. 2022) (holding that defendant "abandoned any argument as to the denial of [a] claim" when defendant "[o]n appeal . . . made no argument specifically challenging that ruling").

Putting aside that the sentencing order reflects that some jurors found that certain mitigating circumstances existed, we do not address this barred claim. We thus need not speculate

whether, for example, the jurors concluded that Mosley failed to establish that he "graduated from High School," or whether they instead concluded that Mosley's high school diploma was simply not mitigating—i.e., that it was not a circumstance that supported a life sentence.

The time for Mosley to bring this penalty phase claim was on direct appeal of the death sentence imposed after the second penalty phase. In that appellate proceeding, we upheld the second penalty phase against Mosley's attack—an attack that did not include this claim. Because this issue should have been raised in that proceeding, the issue is now barred. *Cf. Covington v. State*, 348 So. 3d 456, 471 (Fla. 2022) (holding that a claim that "should have been raised on direct appeal" was "procedurally barred" (citing *Dailey v. State*, 283 So. 3d 782, 793 (Fla. 2019))).

## Newly Discovered Evidence

Mosley next argues that the trial court erred in denying an evidentiary hearing regarding his claim of newly discovered evidence of the medical examiner's alleged impairment. This issue, in which Mosley seeks a new guilt phase, similarly exceeds the scope of this Court's remand. In any event, even assuming counsel properly

"adopted" the unauthorized motion that Mosley filed years earlier, the untimely appeal of the denial of the adopted motion warrants dismissal.

Under *Farina*—on which Mosley and counsel relied in requesting an evidentiary hearing prior to "the conclusion of his resentencing," 191 So. 3d at 456—the trial court's order denying relief here was a final order. *See id.* at 454-55 (treating "as an appeal from a final order" the defendant's petition that sought "review of a trial court order that dismissed his motion for a new trial based on newly discovered evidence"). The trial court issued that final order on February 3, 2023. But Mosley did not appeal that final order until August 3, 2023, when he appealed the new sentencing order. Mosley's appeal of the final order denying relief was hardly "within 30 days of the rendition of the order." Fla. R. Crim. P. 3.851(f)(8); Fla. R. Crim. P. 3.850(k). Because Mosley's appeal of that final order is plainly untimely, we dismiss it.

Even if Mosley's claim had been presented to us in a timely manner, we would unhesitatingly reject it. To succeed on his claim of newly discovered evidence, Mosley "must establish two prongs": first, "that the evidence was not known by the trial court, the party,

or counsel at the time of trial and it could not have been discovered through due diligence at the time of trial"; and, second, "that the newly discovered evidence is of such a nature that it would probably produce an acquittal on retrial." *Sheppard v. State*, 338 So. 3d 803, 825 (Fla. 2022) (citing *Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998)). Putting aside the fact that, as the trial court determined, Mosley's claim was "based upon correspondence and filings that predate the murders" and that could have been presented at trial "to impeach Dr. Arruza," Mosley cannot possibly establish the second prong. Whether or not Dr. Arruza was impaired, her testimony—as outlined above—regarding Wilkes's skeletonized remains and the likelihood that a baby would die if tied up in a garbage bag was of such little evidentiary value that it had no impact on the outcome of Mosley's guilt phase.

### III. CONCLUSION

For these reasons, we affirm Mosley's death sentence.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Duval County,
    Michael R. Weatherby, Judge
    Case No. 162004CF006675AXXXMA

Matthew S. Metz, Public Defender, and George D.E. Burden, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, Florida,

    for Appellant

Ashley Moody, Attorney General, Tallahassee, Florida, and Lisa-Marie Lerner, Assistant Attorney General, West Palm Beach, Florida,

    for Appellee